**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BRYANT MOORE | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | RWT CA: 11-CV-3644 |
| | ) | |
| LIGHTSTORM  ENTERTAINMENT ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE
AND OTHER RELIEF**

**COMES NOW** Plaintiff, Bryant Moore, by and through undersigned counsel, and respectfully files this Second Amended Complaint against Defendants Lightstorm Entertainment, Inc. ("Lightstorm"), James Cameron ("Cameron") and Twentieth Century Fox Film Corporation ("Fox") (collectively "Defendants") for breach of implied contract, copyright infringement, an accounting, and declaratory and equitable relief.

**INTRODUCTION**

Plaintiff, a passionate science fiction writer, has written several original works, including the infringed upon works at issue; namely, "*Aquatica*" and "*Descendants: The Pollination*" ("*Pollination*").  *Aquatica* was written in 1992 and registered in 1994.  The *Pollination* was written in 2002 and registered in 2003. The screenplay for the film *Avatar* was registered in 2006 and subsequently released in December 2009.  Plaintiff's screenplays contain many original and creative expressions of ideas (and/or ideas for implied contract purposes) which are substantially similar to *Avatar*.  It's common settings, scenes, characters, themes, plots, dialogues, mood, tones, and fragmented literal similarities, when viewed holistically, transcend coincidence.

Plaintiff transmitted *Aquatica* was submitted to Lightstorm in 1994 and transmitted *Pollination* to Lightstorm in 2003. Defendants thus enjoyed access to Plaintiff's respective works prior to registering the *Avatar* screenplay in 2006. Defendant Cameron claims that he wrote a scriptment prior to 1994, although the purported scriptment was never registered and has yet to be verified.

*Avatar's* substantial similarities, which include more than twenty (20) fragmented literal similarities, were extrapolated and aggregated from both *Aquatica* and *The Pollination.* Comparisons of *Avatar* and Plaintiff's screenplays are attached as Exhibit 1 and 2 to the amended complaint. Defendants, upon information and belief, deliberately and intentionally integrated core select segments from Plaintiff's two (2) screenplays into *Avatar*, a single theatrical work. It further extrapolated expressions of ideas (and "ideas" for purpose of Plaintiff's implied contract claim) from *The Pollination* and *Aquatica's* separate and distinct settings, themes, plots, characters, moods, tones and dialogues, as well as copyrightable expressions of ideas from Plaintiff's drawings.

Defendants, jointly and severally, and without Plaintiff's authorization, permission or credit for his creations, copied and appropriated substantial content from Plaintiff's original copyrighted screenplays and artwork. Based thereupon, Plaintiff alleges (i) breach of an implied contract as per *Pollination* and *Aquatica*, (ii) copyright infringement as per *Pollination* and *Aquatica*, (iii) an accounting and (iv) for certain declaratory, equitable and injunctive relief.

All Exhibits to Plaintiffs First Amended Complaint ("FAC") are incorporated by reference and Plaintiff's 2005 drawings and corresponding copyright registration are respectively attached herein as Exhibit 8 and 9.

## JURISDICTION AND VENUE

1.   This is an action for common law breach of implied contract and copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. ("Copyright Act"). This Court has subject matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

2.   Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391(b) and 1400 because Defendants conduct business, may be found in, and/or are subject to personal jurisdiction of this court, having marketed, distributed and featured the production of the movie *Avatar* and throughout the United States.  Plaintiff resides in the state of Maryland and injury to Plaintiff occurred in the state of Maryland and throughout the United States.

## PARTIES

3.   Plaintiff, a resident of the state of Maryland, is a writer, planner, and community/economic development professional.  His economic/community development experience includes work with biotechnology, biomedical advances, life sciences, green projects, green enterprise development, environmental health indicators/assessments/analysis, and environmental initiatives.  He has never licensed nor otherwise authorized Defendants or anyone else to copy, distribute or publicly disseminate his subject copyrighted works herein in any respect.

4.   Defendant, James Cameron ("Cameron"), is a writer, producer, director, and principal owner of Lightstorm Entertainment, Inc.  He purportedly wrote the movie *Avatar*.

5.   Defendant, Lightstorm Entertainment Incorporated ("Lightstorm"), is a production company which Cameron owns and operates.  It is organized and exists under the laws of

the state of California and does business in Santa Monica, California at its principal place of business, 919 Santa Monica Boulevard, Santa Monica, California, 90401. At all times referenced during 2003, Tom Cohen was Creative Executive for Lightstorm.

6. Defendant, Twentieth Century Fox Film Corporation ("Fox"), is a film studio which engages in the production, acquisition and distribution of motion pictures for theatrical exhibition, home entertainment, television programming and other forms of distribution. It is the producer and distributor of the movie *Avatar*. Fox is a Delaware corporation with its principal place of business located at 10201 West Pico Boulevard Los Angeles, California 90067.

7. Upon information and belief, each named Defendant was the agent, servant, partner, joint venturer, and employee, each of the other Defendants, acting within the course and scope of his, her, or its agency and employment with the full knowledge, consent and ratification of each other defendant. Further, each Defendant knowingly performed one or more acts related to the alleged infringement, and/or contributory breach of Plaintiff's implied contract.

## FACTS COMMON TO ALL CLAIMS

8. The motion picture *Avatar* (the "Film") was released in movie theaters worldwide by Fox in December of 2009.

9. *Avatar* is the highest grossing film ever produced with reported box office earnings of $2,782,275,172. It was nominated for nine (9) Academy Awards, including Best Picture and Best Director, and won three (3) Academy Awards for Best Cinematography, Best Visual Effects, and Best Art Direction. The Film also won a Golden Globe Award for Best Director. An Avatar video game of the Film was released in 2009. A DVD special

edition of the Film was also released and two (2) sequels to the Film are planned which reportedly develop the storyline with respect to the oceans of the *Avatar* world.  An *Avatar* amusement park and joint venture project is also being planned. In correspondence with Plaintiff, Defendants contend that Cameron's work is an original work of authorship; the film *Avatar*, however, is substantially similar in numerous material respects to the fixed expression of original ideas set forth in Plaintiff's screenplays.

## The Protected Work

10.  Between 1992 and 1994, Plaintiff wrote and developed a screenplay entitled *Aquatica*. Plaintiff wrote the screenplay *The Pollination* between 2002 and 2003.

11.  Plaintiff possesses legitimate, valid copyright registration certificates for *Aquatica* (May 1994), *Descendants: The Pollination* (July 2003), *The Pollination* (May 2006) and *Aquapocalypse* (May 2006).  *See* First Amended Complaints at Exhibits 3 and 4.[1] Plaintiff's copyrighted work, *Aquatica*, pre-dates the registrations for the Project 880 screenplay/*Avatar* screenplay and the motion picture version of *Avatar*.

12.  Plaintiff's works are filled with more than enough substantive story, plot, characters and characterization, theme, mood, pace and dialogue for Defendants to appropriate sufficient portions and to have had a substantial, positive impact on their unauthorized derivative work, *Avatar*.

---

[1] In 2006, Plaintiff revised *The Pollination*. Plaintiff registered *The Pollination* with the Writers Guild of America on May 3, 2006 and with the copyright office on May 4, 2006 (Registration no. PAu003067003).

13.   Plaintiff's referenced substantial similarities in Exhibits 1 and 2 to the "FAC" are not
      "scenes-a-faire or situations and incidents that flow necessarily naturally from a basic
      plot premise," but are situations and incidents which stem from the story and its nuanced
      detailed sequences and settings that comprise the specific substance of story events and
      related story elements in Plaintiff's respective scripts.

14.   The unique expressions of ideas and/or ideas in *Aquatica* and *The Pollination*, as
      appropriated by Defendants in *Avatar*, are not a random combination of abstract
      elements, but add novelty and distinctiveness to the story in that they comprise essential
      sequences, and substantially similar characters, plots, scenes as sequences, moods,
      setting, and dialogue.

15.   The lists of "Substantial Similarities" between the referenced works are inherently non-
      abstract and original expressions that transcend scenes-a-faire.  Further, the common
      sequencing of these similarities illustrates compelling substantial similarities between
      Plaintiff's works and *Avatar*.

16.   Plaintiff's fragmented literal similarities also show rare, highly unlikely mirrored
      concepts, scenes and wording that support its substantial similarities to *Avatar*.

17.   In the alternative, Plaintiff asserts that these substantial similarities, if not copyright
      protected or expressions of ideas, constitute unique and protected ideas and concepts for
      purpose of Plaintiff's implied contract claims.

18.   Plaintiff's claims against Defendants stem from their separate, distinct and independent
      infringement of Plaintiff's two scripts, *The Pollination* and *Aquatica*, which enjoy
      equally striking substantial similarities to *Avatar*.

19.  Striking substantial similarities between the *Pollination* and *Avatar* include, but are not limited to: similar opening scenes; bioluminescent flora/plant life and green bioluminescence in particular; "alien" trees and/or foliage; an initial conflict that evolves into an immediate defensive alliance and romance; tribal matriarchs and patriarchs (50-ish matriarch) with strong ancestral connections and ancestral memories; matriarch and patriarch observation and validation of special attraction and relationship between heroes and heroines; matriarchal assignments of responsibility over a heroic outsider; tribal acceptance and protection of the outsider; spiritual connections to environment; similar character development; similar scenes with lush exotic gargantuan plant life; potential harm by co-protagonist to another protagonist until a manifestation of a sign and corresponding and "connection"; similar intuitive messages through signs; unbreathable atmospheres versus village located inside gigantic tree; similar heroic plot development; natives' belief in evolution, and reincarnation; military explosions of plant life; aggressive collaborative military-scientific pursuit of resources; scientific sampling and studies; joint soldier-scientists military missions and battles inside gargantuan forests; united efforts to defeat antagonists; selective bioluminescence; presence of floating seeds versus insects; spiritual sensitivity of natives; and similar romantic attractions.

20.  Striking and substantial similarities between *Avatar* and *Aquatica* include, but are not limited to:  a hero who leaves a former military life to participate in hybrid scientific-military exploration; common Eastern Sea speeches; lead female scientists; colossal foliage; military-technical collaboration and search for rare and valuable natural resources not in their control; genetically created and engineered beings ("Biologicals"); common lab and aquarium scenes with observations of genetically created beings

swimming inside; swaying towering plants; heroic escapes with the aid of plants; scenes with common reptilian movements, including two (2) grabs and tosses from vehicle during battle scene; heroic flights through giant plants; gargantuan bioluminescent flora; the hero dropping two (2) grenades during a battle scene in a similar action scene; the villain's rousing speeches before final battle; explosions during battle scene with character ejection in downward flight trajectory versus upward jettison; similar exchanges and discussions of terrain data; and scientific assessments of the enemy's flight strength.[2]

**Defendants' Access to Plaintiff's Protected Work**

21.  Prior to Cameron's writing of the screenplay for *Avatar*, Defendants had access to Plaintiff's two (2) scripts and his copyrighted drawings.

22.  They enjoyed access to *Aquatica* via Howard Gibson ("Gibson") who worked as a Production Assistant for Lightstorm on the movie set *True Lies*.

23.  In 1994, via a close connection and Howard University colleague, Plaintiff transmitted *Aquatica* to Gibson. Upon information and belief, Gibson, acting on Plaintiff's behalf, walked the *Aquatica* screenplay into Lightstorm's offices.  Plaintiff never received a subsequent response from Lightstorm.

24.  Defendant Fox had access to *Aquatica* around 1995 via Anthony Lancto ("Lancto"). Lancto received a copy of *Aquatica* from Syracuse University classmate John Wiles

---

[2] Plaintiff incorporates herein the Substantial Similarity Comparisons between *Avatar* and *The Pollination* in Exhibit 1 and between *Avatar* and *Aquatica* in Exhibit 2.

("Wiles"), with whom Plaintiff worked at the South East Consortium for International Development ("SECID") and met in Ballston, Virginia, where he provided a copy of the screenplay. Wiles delivered the screenplay to Lancto. Plaintiff had subsequent conversations with Lancto about the screenplay while Lancto was employed at Fox, which included getting a producer interested in the project.  Lancto informed Plaintiff that he kept the script on his desk.

25.   In or around January 2003, Plaintiff contacted the Director's Guild of America to obtain contact information for numerous film directors in order to submit materials directly to them for review, as is common industry practice.  At that time Plaintiff was given contact information for various film directors, including the contact information for James Cameron's manager at that time, namely Sher, Sherr, Gelb & Company ("SSG").

26.   In early 2003, Plaintiff once again sent *Aquatica* to Lightstorm.  This time he sent the script to Toya Iella of SSG, James Cameron's business manager.  Phone calls related to its communications with SSG include those placed on February 19, 2003 and February 20, 2003.

27.   After a referral from SSG, on April 7, 2003, Plaintiff sent *Aquatica* to Tom Cohen ("Cohen"), Lightstorm's Creative Executive.

28.   On May 19, 2003, Plaintiff sent a memo along with a snow globe containing a computer drawing of an underwater city and submarines as a gracious reminder to Cohen about *Aquatica*.  Defendant Lightstorm then informed Plaintiff that it was not interested in producing the screenplay.

29.   In July 2003, Plaintiff through counsel sent *The Pollination* to Lightstorm via FedEx with permission from Lightstorm.

30.    Plaintiff followed up with phone calls to Lightstorm in July, September, and October
       2003, and in February 2004 by way of communication to Cohen through US Postal
       Express Mail.

31.    Phone calls records related to Lightstorm Entertainment are documented as follows:

       a.    March 24, 2003 -  Phone Call (Lightstorm Entertainment Inc.).

       b.    March 27, 2003 -  Phone Call (Lightstorm Entertainment Inc.).

       c.    April 4, 2003 -  Phone Call (Lightstorm Entertainment Inc.).

       d.    May 20, 2003 - Phone Call (Lightstorm Entertainment Inc.).

       e.    May 30, 2003 - Phone Call (Lightstorm Entertainment, Inc.).

       f.    June 18, 2003 - Phone Call (Lightstorm Entertainment, Inc.).

       g.    August 12, 20003 - Phone Call (Lightstorm Entertainment, Inc.).

       h.    September 12, 2003 - Phone Call (Lightstorm Entertainment Inc.).

32.    On April 29, 2005, Plaintiff registered with the copyright office sketches and drawings of
       key scenes, characters and crafts, entitled *Pollination Art*.  The sketches were created by
       Plaintiff and Plaintiff's spouse, Sherri Moore.  These sketches were delivered to producer
       Sybil Danning who has a nexus with Cameron, having known him since 1980 when they
       worked together on the film *Battle Beyond The Stars*.

33.    On May 3, 2006, Plaintiff registered a revised copy of *The Pollination* with the Writers
       Guild of America.

34.    Almost thirteen (13) years after obtaining the copyright registration for *Aquatica* and over
       three (3) years after obtaining the copyright registration for *The Pollination*, Defendants
       registered the screenplay Project 880 that became the film *Avatar* (November 2006 pre-
       registered).  *Avatar* was subsequently released in theaters in December 2009.  Upon

information and belief, Cameron and Lightstorm were given, shown, and read both *Aquatica* and *The Pollination* prior to their alleged conception and development of *Avatar*.

35.   Based upon the fact that both Cameron and Lightstorm had a reasonable opportunity to view and read Plaintiff's original works, Defendants enjoyed the access required to actually copy them.

36.   In addition to access, there is substantial similarity between Plaintiff's copyrighted works and *Avatar* which infringes upon Plaintiff's original copyrights as a matter of law. In the alternative, to the extent that these similarities are not deemed expressions of ideas, they are deemed ideas for purpose of Plaintiff's implied contract claim.

37.   Upon information and belief, Defendants used their documented access to Plaintiff's original copyrighted works and selectively extrapolated themes and content from each.

38.   Defendants' selective and substantial extracts from Plaintiff's copyrighted work was used to develop, write and produce the movie *Avatar*.   Plaintiff employs the theory of *respondeat superior* and/or agency where appropriate.

## COUNT I
## BREACH OF IMPLIED CONTRACT
## POLLINATION

39.   Plaintiff repeats and incorporates by reference paragraphs 1-38 as set forth fully herein.

40.   At the time of Plaintiff's aforementioned delivery of his scripts and artwork to Lightstorm at its California office, an implied contract (the "contract") was formed between Plaintiff and Defendants.  Thereupon, as is customary in the film industry, Defendant(s) implicitly agreed not to use Plaintiff's works without paying him reasonable compensation and affording him credit.

41.   Plaintiff clearly conditioned his disclosures to Lightstorm upon an expectation that its use of his copyrighted works would result in compensation, and Lightstorm accepted Plaintiff's works with that in mind.

42.   A duty to pay compensation arose when (i) Plaintiff submitted his works to Defendant(s) for consideration; (ii) relied upon Defendants' obligation to pay in accordance with well accepted industry standards and practices when original works are submitted for consideration and ultimately used; and (iii) Defendants, with knowledge of that duty, voluntarily accepting and ultimately using Plaintiff's original works to produce *Avatar*.

43.   In releasing *Avatar* to the public, and in marketing and selling sequels and derivatives, some of which are mentioned herein, without compensating Plaintiff or giving him any credit, Defendants breached their implied contract with him.

44.   As a direct and proximate result of Defendants' use and exploitation of ideas and concepts in *Pollination*, Defendants and their agents and assigns have and will continue to be financially benefited, and Plaintiff has suffered and will continue to suffer damages in an amount to be determined.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**AQUATICA**

45.   Plaintiff repeats and incorporates by reference paragraphs 1-44 as set forth fully herein.

46.   In 1994, via a close connection and Howard University colleague, Plaintiff transmitted *Aquatica* to Gibson.   Upon information and belief, Gibson walked the *Aquatica* screenplay into Lightstorm's offices.  Plaintiff never received a subsequent response from Lightstorm regarding this transmittal except that Plaintiff confirmed that Gibson did deliever *Aquatica* to Lightstorm.

47.   Gibson was, at that time, an assistant with Defendant Cameron's *True Lies* production team in California.

48.   Plaintiff did thereafter confirm delivery of said script to Gibbon and his receipt thereof.

49.   At the time of Plaintiff's aforementioned delivery of his scripts and artwork to Defendants at their California offices, an implied contract (the "contract") was formed consummated between Plaintiff and Defendants.   Thereupon, as is customary in the film industry, Defendant(s) implicitly agreed not to use Plaintiff's works without paying him reasonable compensation and affording him credit.

50.   A duty to pay compensation arose when (i) Plaintiff submitted his works to Defendant(s) for consideration; (ii) relied upon Defendants' obligation to pay in accordance with well accepted industry standards and practices when original works are submitted for consideration and ultimately used; and (iii) Defendants, with knowledge of that duty, voluntarily accepting and ultimately using Plaintiff's original works to produce *Avatar*.

51.   In releasing *Avatar* to the public, and marketing and selling sequels and derivatives, some of which are mentioned herein, without compensating Plaintiff or giving him any credit, Defendants breached their implied contract.

52.   As a direct and proximate result of Defendants' use of the ideas and concepts in *Aquatica*, Defendants and their agents and assigns have and will continue to financially benefit, and Plaintiff has suffered and will continue to suffer damages in an amount to be determined.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF POLLINATION**
**VIOLATION OF FEDERAL COPYRIGHT ACT**

53.   Plaintiff repeats and incorporates by reference paragraphs 1-52 and Exhibit 1 herein as set forth fully in this claim.

54.   Defendants infringed Plaintiff's work, *The Pollination*, by copying the works and by distributing, selling and producing, claiming authorship over and/or contributing to claim authorship over *The Pollination* which infringed upon Plaintiff's copyrighted work and their protected derivatives that belonged exclusively to Plaintiff.

55.   Defendants used Plaintiff's work, sales derived therefrom, and all of Defendants' copying of Plaintiff's works was carried out to exercise control over the works for its profit and advantage.

56.   Further, Defendants induced, participated, aided and abetted in, and profited from the copying of Plaintiff's works without his permission, thereby infringing upon his copyright.

57.   Because of Defendants' willful copyright infringement, Plaintiff has suffered and will continue to suffer substantial economic damages in the form of loss income and profits, loss business opportunities, and dilution of the value of his original works.

58.   As a further direct result of Defendants' acts of copyright infringement, and or contributory copyright infringement of Plaintiff's works, Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to their respective and patently malicious infringement of Plaintiff's works.

**COUNT IV**
**COPYRIGHT INFRINGEMENT OF AQUATICA**
**VIOLATION OF FEDERAL COPYRIGHT ACT**

59.   Plaintiff repeats and incorporates by reference paragraphs 1-58 herein as set forth fully in this claim.

60.   Defendants infringed Plaintiff's work, *Aquatica*, by copying the works and by distributing, selling, producing, and claiming authorship over and/or contributing to claim

authorship of *Aquatica* which infringed upon Plaintiff's copyrighted work and their protected derivatives that belong exclusively to Plaintiff.

61.    Defendants uses of Plaintiff's work, its copying of Plaintiff's works, and sales therefrom, were carried out to exercise control over the works for their profit and advantage.

62.    Further, Defendants induced, participated, aided and abetted in, and profited from copying Plaintiff's works without his permission, thereby infringing upon his copyright.

63.    Because of Defendants' acts of willful copyright infringement, Plaintiff has suffered and will continue to suffer substantial economic damages in the form of loss income and profits, loss business opportunities, dilution of the value of his rights.

64.    As a further direct result of Defendants' acts of copyright infringement, and or contributory copyright infringement of Plaintiff's works, Plaintiff is entitled to disgorgement of each Defendant's profits directly and indirectly attributable to their respective and patently malicious infringement of Plaintiff's works.

## COUNT V
## FOR AN ACCOUNTING
## ALL DEFENDANTS

65.    Plaintiff repeats and incorporates by reference paragraphs 1-64 as set forth fully herein.

66.    Plaintiff is entitled to a full and complete accounting with respect to all revenue derived by Defendants, in order to determine what profits and/or royalties to which he is entitled.

67.    The amount that the Defendants have collected is unknown to the Plaintiff and cannot be ascertained without an accounting.

68.    Plaintiff is informed and believes that the amount owed to him exceeds $1,500,000,000.00.

**COUNT VI**
**FOR DECLARATORY RELIEF**
**AGAINST ALL DEFENDANTS**

69.   Plaintiff incorporated paragraphs 1-68 as set forth fully herein.

70.   An actual dispute and controversy now exists between the named Defendants and the
Plaintiff as to the ownership/authorship of *Avatar*.  Plaintiff contends that he should be
credited and paid as creator and co-producer thereof.

71.   Plaintiff desires and requests a judicial determination and declaration regarding the
parties' respective rights and obligations as per *Avatar*.  Plaintiff seeks to be credited and
paid as a creator and co-producer on all future broadcasts, DVD releases, licenses, etc. of
*Avatar* without exclusion.

**WHEREFORE**, having stated heretofore its claims, Plaintiff prays that this Court enter
judgment in its favor and against Defendants, jointly and severally, as follows:

A.   For actual damages and profits in excess of $1,500,000,000.00 according to proof.

B.   For a preliminary and permanent injunction enjoining Defendants from infringing further
upon Plaintiff's copyrighted material in any matter;

C.   An accounting as to any and all gains, profits, advantages, and interests derived by
Defendants' infringement of Plaintiff's respective protected works;

D.   Declaratory relief, as appropriate, relative to Plaintiff's copyright;

E.   Punitive damages in excess of $1,000,000,000.00, if and where appropriate;

F.   Related to bringing this case; Such other relief as this court deems  appropriate and
necessary including that Defendants be restricted from use of said infringed work,
*Avatar*, during the pendency of this litigation, and that this court take in possession or
under its control, and deliver up for retention all infringing copies and all plates, molds,

or other matter used to make infringing copies, and further that Defendant be precluded

from use of said infringing works for any commercial or other profit related purposes;

and

G. For statutory damages, attorney's fees, and costs.

**JURY TRIAL DEMANDED**

Respectfully submitted,

*Donald M. Temple*_____
Donald M. Temple (#408749)
1101 15th Street, N.W.
Suite 910
Washington, D.C. 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com
Attorney for Plaintiff

DATED:  August 17, 2012