IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| BRYANT MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 8:11-cv-03644 (RWT) |
| v. ) | |
| ) | |
| LIGHTSTORM ENTERTAINMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**PLAINTIFF'S RULE 60(b)(6), OR IN THE ALTERNATIVE RULE 59(e),
MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND
THE ORDER ISSUED ON MARCH 18, 2013,
<u>DISMISSING PLAINTIFF'S BREACH OF IMPLIED CONTACT CLAIMS</u>**

Comes Now Plaintiff, Bryant Moore ("Moore"), by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 60(b)(6), or in the alternative 59(e), and respectfully moves this honorable court to reconsider and alter or amend its Order issued on March 18, 2013. By that Order, the court dismissed Moore's breach of implied contract claims after finding that the federal Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.*, preempted such Maryland state law claims. In support thereof Plaintiff submits that the court's order was based on an erroneous understanding or clear error of law.

Plaintiff dutifully sought Defendants' consent for this motion, which was not given herein.

**I.      INTRODUCTION**

Moore seeks this court's reconsideration of its dismissal of his implied contract claims because said claims are not rooted in Maryland law, but rather California law, which would allow Plaintiff to properly bring his asserted claims. As there is a conflict of law issue here, Maryland

1

choice-of-law rules govern the court's consideration of applicable law. As argued below, Moore's implied contract, distinct from his asserted copyright claim, was formed in the state of California and this court should treat it accordingly; to wit, California, not Maryland, state law should have informed this court's ruling on Defendants' motion to dismiss. Moore respectfully moves this honorable court to reconsider and or to alter or amend the Order it issued on March 18, 2013, to correct a clear error of law and to prevent a manifest injustice.

## II.   APPLICABLE STANDARD

### A.   Rule 59 Standard of Review

Consideration of a motion to reconsider and alter or amend a judgment is committed to the sound discretion of the trial court. *See Doe v. Heckler*, 580 F. Supp. 1224, 1227 (D. Md. 1987). Federal Rule of Civil Procedure 59(e) permits amendment of a judgment for three (3) reasons:

> (1) To accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*E.E.O.C. v. Lockheed Martin Corp. Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997). As the *Lockheed* court explained, a Rule 59(e) amendment is appropriate when the initial judgment is predicated on an erroneous understanding, not necessarily of the court's fault, of the relevance of information to the issue before the court. In *Lockheed*, the E.E.O.C. sought to enforce a subpoena that it had issued to Lockheed while investigating whether Lockheed had engaged in age discrimination. The subpoena asked Lockheed to identify what computerized files it had maintained on its personnel from 1991 to 1995. After a conference call with the parties, the district court, by order, denied enforcement of the subpoena on the ground that the E.E.O.C. had

not adequately demonstrated the relevance of the information sought to its investigation. *Id*. at 111. The E.E.O.C. timely filed a motion for reconsideration pursuant to Rule 59(e) and attached to its motion affidavits of eight (8) E.E.O.C. employees that clarified how the subpoenaed information would permit a faster and more efficient investigation. *Id*. The motion for reconsideration was granted and enforcement of the subpoena ordered. *Id*.

On appeal, Lockheed argued that the motion was improvidently granted because the information provided in the eight (8) affidavits was not newly discovered evidence. The Fourth Circuit rejected this argument, noting that in a subsequent order denying Lockheed's motion to stay enforcement of the subpoenas, the district court specifically clarified that new evidence was not the basis for its reconsideration. Rather, the district court explained the affidavits made it clear that the original order denying enforcement was based on an erroneous understanding of the relevance of the information the E.E.O.C. sought by the subpoena. *Id*. at 112. The Fourth Circuit thus found that the district court granted the Rule 59(e) motion to "correct a clear error of law or prevent a manifest injustice" and affirmed, finding no abuse of discretion in that decision. *Id*. As the Fourth Circuit made clear in *Lockheed*, a Rule 59 Motion is appropriate when governing a court's reconsideration based upon a correction of a clear error of law.

### B. Rule 60 Standard of Review

Under Rule 60(b), a party may obtain relief from a judgment or final order based upon: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied,

released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Rule 60(b)(6), the "catchall" clause of Rule 60(b), allows relief for "any other reason justifying relief from the operation of the judgment." This provision provides the court with "a grand reservoir of equitable power to do justice in a particular case" and "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice" where relief is not available under any other clause. *Eberhardt v. Integrated Design & Construction, Inc.*, 167 F.3d 861, 871 (4th Cir. 1999) (internal quotations omitted). Further, the U.S. Supreme Court has explicitly held that Rule 60(b)(6) "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (quoting *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 93 L.Ed. 1099 (1949)).

### III.   ARGUMENT

Plaintiff Moore respectfully submits that an erroneous understanding, or error of law occurred as per the court's application of Maryland state law to Plaintiff's implied contract claims. This erroneous understanding or error of law resulted in this court's ruling that the exclusivity provision of the Copyright Act preempted Moore's Maryland state law claims, presuming that Moore's works fell within scope of the subject matter of copyright, as specified in the Act, and that the rights granted under Maryland state law were equivalent to the exclusive rights within the scope of federal copyright. *See* 17 U.S.C. §§ 106, 301(a). Plaintiff asserts, however, that Maryland's choice-of-law rules, convincingly demonstrate that Plaintiff's implied

contract claims are governed by California law and are therefore not preempted. As the Fourth Circuit has instructed " '[u]nder Maryland choice-of-law rules, a contractual claim (including a claim for an implied contract) is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs.' " *Schwartz v. Rent A Wreck America Inc.*, 468 Fed.Appx. 238, 247 n. 9 (4th Cir. 2012) (quoting *Harte–Hanks Direct Mktg./Baltimore, Inc. v. Varilease Techn. Fin. Gr., Inc.*, 299 F.Supp.2d 505, 518 n. 13 (D. Md. 2004)). The Fourth Circuit's recent *Schwartz* decision gives this court clear guidance on the choice-of-law issue. Like in *Schwartz*, Moore's case involves a Maryland corporation, a California corporation, an implied contract claim, and a choice of law issue. The trial court determined the existence of an implied contract under California law based upon the parties' conduct, largely rooted in California, which the Fourth Circuit later affirmed.

Against this backdrop, Moore transmitted his first copyrighted screenplay, *Aquatica*, to Lightstorm in 1994, per a transmittal to Howard Gibson. *See* Plaintiff's Second Amended Complaint (the "SAC") at ¶ 22. Although access is now partially contested, Moore's transmittal occurred, for purpose of this argument, in the state of California. In 2003, Moore transmitted his second copyrighted screenplay, *Descendants: The Pollination*, and re-transmitted *Aquatica* to Tom Cohen, Defendant Lightstorm's Creative Director, at Lightstorm's California address. *See* SAC at ¶ 27. Both scripts were thus transmitted to Defendant Lightstorm in the state of California. To the extent used, these screenplays were effectively accepted by Lightstorm as per the ordinary course of dealing in the television and film industry. Defendant Lightstorm's receipt and acceptance on behalf of itself and

Defendant Cameron, we submit, constitute the last acts required to form the implied contract and to make it binding.

Plaintiff's choice of law analysis is consistent with the Fourth Circuit's analysis in *Schwartz*. To be clear, California law governs this court's treatment of what are otherwise known in the film industry as *Desny* claims. *See Desny v. Wilder*, 46 Cal.2d 715 (Cal. 1956) (authorizing recovery for breach of implied-in-fact contract where the recipient of a valuable idea accepts the idea knowing that compensation is expected, and subsequently uses the idea without paying). "To establish a *Desny* claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) (citing *Faris v. Enberg*, 97 Cal.App.3d 309, 158 Cal.Rptr. 704 (Cal.App.Ct. 1979)). To the extent that Plaintiff asserts a viable California legal claim, this court should have applied California law in its consideration of said claim.

    **A.**    **Maryland Choice-of-Law Rules Govern Moore's *Desny* or Implied Contract Claims.**

As plead, Moore resides in the state of Maryland. Defendants are located in the state of California. *See* SAC at ¶ 5. "[A] district court sitting in diversity in Maryland applies the substantive law of the State of Maryland, and follows the decisions of Maryland state courts regarding choice of law rules." *Eastern Stainless Corp. v. American Protection Ins. Co.*, 829 F.Supp. 797, 799 (D. Md. 1993) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817,

822, 82 L.Ed. 1188 (1938)). In Maryland, when determining which law controls the enforceability and effect of a contract, the general rule is to apply the principle of *lex loci contractus*, or the law of the place where the agreement is made. *See Schwartz*, *supra*. at 4; *see also Kramer v. Bally's Park Place*, 311 Md. 387, 535 A.2d 466 (1988).

It is axiomatic that the law of the jurisdiction where the contract was made determines the validity of the contract. *See Bethlehem Steel v. G.C. Zarnas & Co.*, 304 Md. 183, 188, 498 A.2d 605 (1985); *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651 (1975). Most significantly, the place where the contract is made is "the place where the last act is performed which makes the agreement a binding contract." *Schwartz*, *supra*. at 4; *Riviera Beach Vol. Fire Co., Inc. v. Fidelity & Cas. Co. of New York*, 388 F.Supp. 1114, 1120 (D. Md. 1975) (citing *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 65-66, 215 A.2d 467 (1965)). As such, in order to properly determine which jurisdiction's laws apply to Moore's implied contract claims, the court must assess the record and/or pleadings in the first instance under Maryland choice-of-law rules to determine where the contract was made.

### B. The Implied Contracts at Issue Were Made In California.

Generally, "[a]n implied contract is an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding." *Bank of America Corp. v. Gibbons*, 173 Md. App. 261, 918 A. 2d 565 (2007) (internal quotations omitted). It is "inferred from the conduct of the parties and arises where a party, without being requested to do so, renders services under circumstances indicating that the party expects to be paid, and the other party, knowing such circumstances, avails him- or herself of the benefit of those services." 5A M.L.E. Contracts § 2 (citing *County*

*Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000)).

The ordinary course of dealing in the television and film industry is expressed quite succinctly in Montz:

> Writers in the Hollywood film industry often submit scripts to producers, or set up meetings with them, in the hope of selling them the scripts and concepts for movies. The practice has carried over into television. Since the writer is looking for someone to turn the written work into an entertainment production, writers often pitch scripts or concepts to producers with the understanding that the writer will be paid if the material is used.

649 F.3d at 978-79.[1] Moore submitted his scripts to Defendants in California "in the hope of selling them the scripts and concepts" contained within the scripts. *See* SAC at ¶ 40-43. Moore's actions, under the ordinary course of dealing in the television and film industry, constituted an offer. Defendants accepted Moore's protected works "with the understanding that the writer will be paid if the material is used." *See* SAC, Counts I and II. "[Under] Maryland law, 'the *locus contractus* is the place where the last act is performed which makes an agreement a binding contract.'" *Stout v. Home Life Ins. Co.*, 651 F.Supp. 28, 32 (D. Md. 1986), *aff'd*, 818 F.2d 29 (4th Cir. 1987) (quoting *Grain Dealers Mut. Ins. Co.*, 215 A.2d at 471). As such, Defendants' receipt of Moore's works and assent to comply with the industry standard is,

---

[1] "But what happens when the producer uses the idea or concept embodied in the script, but doesn't pay? The Supreme Court of California, in 1956, answered this question by recognizing an implied contractual right to compensation when a writer submits material to a producer with the understanding that the writer will be paid if the producer uses the concept." *Montz*, 649 F.3d at 976 (citing *Desny v. Wilder*, 46 Cal.2d 715, 299 P.2d 257 (1956)). Based on the industry standard described above, the court in *Montz* noted that "[a] so-called '*Desny* claim' has remained viable under California law for over fifty years." *Id*. (citations omitted).

undoubtedly, the point at which the contract is formed.[2] The Second Circuit considered a similar choice of law issue in *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2012), and ruled as Plaintiff urges here.[3] Based upon applicable law, the court should have assessed Plaintiff's implied contract claims under the proper jurisdiction's governing law, namely California law.

### C. Moore's Implied Contract Claims Are Not Preempted.

In its ruling, the court appears to have determined that Moore's claims were rooted in Maryland law and were thus preempted under Maryland jurisprudence. In the first instance, to the extent that California law applies here to the substantive claim, the court should defer to said law as to the viability of the asserted claims. In this connection, as noted by the Ninth Circuit

---

[2] In *Grosso*, the court established the standard for an implied contract claim, based on the television and film industry standard, and confirmed that Defendants' must perform the last act in the formation of the contract. 383 F.3d at 967.

[3] The Second Circuit reversed the lower court in part, ruling that California law applied, noting in pertinent part: "….Therefore, we next must determine the 'center of gravity' of the contract. Here, almost all of the significant contacts are with California: the sole face-to-face meeting between Forest Park and USA Network was in California; at least part of the performance (Forest Park's disclosure in writing and orally of its idea) took place there; the written series treatment was physically located there; two out of the three plaintiffs are California residents; and, while Universal Television Network's principal place of business is in New York, all of the activity related to this contract took place in USA Network's California offices. *See, e.g., Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 261 (2d Cir. 2002) (applying New York law where the parties were either incorporated in New York or had their principal places of business there, where the oral contract was negotiated in New York, and where performance took place in part in New York); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F.Supp.2d 1, 13 (S.D.N.Y. 2001) (applying California law to a contract negotiated entirely in California, and performed in both New York and California). We therefore hold that California law applies." *Forest Park, supra.* at 433-434.

Court of Appeals: "The California Courts of Appeal have uniformly concluded that *Desny* claims are not preempted because they flow from agreements and understandings different from the monopoly protection of copyright law." *Montz*, 649 F.3d at 975 (citing *Rokos v. Peck*, 182 Cal.App.3d 604, 617, 227 Cal.Rptr. 480 (1986); *Durgom v. Janowiak*, 74 Cal.App.4th 178, 186-87, 87 Cal.Rptr.2d 619 (1999)). "To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." *Grosso*, 383 F.3d at 968 (citations omitted). As the court in *Grosso* explained, the implied promise to pay as outlined by *Desny* is the "extra element" required to escape preemption. *See id.*; *see also Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 229-30 (4th Cir. 1993). Hence, California law treats implied contract claims distinctly different than Maryland law. Moore properly plead the existence and formation of an implied contract between himself and Defendants under the applicable California law, and his pleading clearly established *Desny* claims. Moore plead that (1) he prepared his works, SAC at ¶ 10; (2) he submitted his works to Defendants in California, SAC at ¶ 23-31; and (3) that Defendants voluntarily accepted Moore's works under the longstanding, ordinary course of dealing in the television and film industry, SAC at ¶ 40. *See Grosso*, 383 F.3d at 967.

*Acorn Structures v. Swantz* provides additional persuasive authority from the Fourth Circuit on this issue and further informs this court as to why Plaintiff's California implied contract claims is not preempted. Acorn designed and built homes. Swantz entered into a "design agreement" which provided for performance of architectural services. Swantz failed to purchase materials from *Acorn* and failed to return pertinent drawings. Acorn asserted, in part, that Swantz had breached the contractual provisions of the "design agreement" by using Acorn's

plans without its consent. Swantz argued that Acorn's breach of contract claim was preempted by federal copyright law, citing 17 U.S.C. § 301. Interestingly, the district court's ruling, favorably commented upon by the appellate court, mirrors Plaintiff's arguments here and the developments on the implied contract cause of action as opined upon by the *en banc* court in *Montz*, to wit, "federal copyright law protects an author's expression, but does not protect the ideas underlying that expression." *Acorn Structures Inc. v. Swantz*, 657 F. Supp. 70, 75 (W.D. Va. 1987). The court determined that while Acorn's deign agreement would be protected by copyright law, "a state law claim which would enforce a breach of contract action for the use of an idea would conflict with the implicit goals of the copyright act." *Id*.

The Fourth Circuit disagreed noting as follows:

> "Plaintiff's contract claim entailed a distinct cause of action not within the subject matter of copyright but arises out of the implicit contractual provisions of the design agreement…. Implicit in the contract between Acorn and Swantz was an agreement that while Swantz did not have to use Acorn's plans, if he did use Acorn's plans then he was obligated either to purchase the plans from Acorn or to purchase his building materials from Acorn. This agreement is clearly implied by the contract. Acorn's cause of action is based upon this implicit provision of the contract which does not arise out of the subject matter of copyright and is therefore a separate and distinct cause of action."

*Acorn Structures, Inc. v. American Institute of Architects*, 846 F. 2d 923, 924-926 (1988). It is important to note that the Fourth Circuit Court of Appeals reversed the district court based upon the above reasoning. To the extent that the immediate implied contract claim pleads the protection of ideas versus expression of ideas and asserts a *Desny* claim, this court need only to visit the *Montz* court's interpretation of applicable state law, and note the parallel reasoning between the Circuits on the protection and preemption of implied contract claims based upon expression of ideas. As noted above, California jurisprudence mirrors the trial court's reasoning

in *Acorn*, as per the Copyright Act's non-protection of expressions of ideas, and the Court of Appeal's reasoning, which resulted in a reversal of the trial court's dismissal of the implied contract claim on preemption grounds. Thus, the court's view that Plaintiff's implied contract claims are preempted are erroneous and inconsistent with both this circuit, the Ninth Circuit, and California's jurisprudence on preemption of Plaintiff's implied contract claims.

## IV.    CONCLUSION

Plaintiff has provided the court a critical legal argument which shows that the court likely erred in its dismissal of Plaintiff's implied contract claims; California law applies to these claims, and as plead said claims are not preempted. For these reasons, consistent with Rule 59 and/or (60)(b), Moore respectfully urges this court to reconsider and alter or amend the Order it issued on March 18, 2013, and deny Defendants' Motion to Dismiss in full.

Dated: April 15, 2013

                                                                        Respectfully submitted,

                                                                        _____/s/_____
                                                                        Donald M. Temple [#408749]
                                                                        1101 15th Street, N.W., Suite 910
                                                                        Washington, D.C. 20005
                                                                        (202) 628-1101 Telephone
                                                                        (202) 628-1149 Facsimile
                                                                        dtemplelaw@gmail.com
                                                                        *Attorney for Plaintiff*