IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRYANT MOORE,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RWT-11-3644 |
| **LIGHTSTORM ENTERTAINMENT,** *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

"Only one thing is impossible for God: to find any sense in any copyright law on the planet." Mark Twain, *The Complete Works of Mark Twain: Mark Twain's Notebook* 381 (Albert Bigelow Paine ed., 1935). Mark Twain's frustration notwithstanding, Congress evinced a clear intent that federal copyright laws preempt equivalent state law claims. *See* 17 U.S.C. § 301 (2006). On March 18, 2013, following a hearing, the Court dismissed Plaintiff Bryant Moore's breach of implied contract claims on preemption grounds. ECF No. 59. Moore now moves for reconsideration of that decision, arguing that the Court erred in holding that those claims are preempted. Mot. Recons., Apr. 15, 2013, ECF No. 73. Moore's Motion for Reconsideration suffers from several fatal procedural defects, and even if it did not, he has failed to satisfy the requirements for motions under the applicable Federal Rules of Civil Procedure. For those reasons, Moore's Motion for Reconsideration will be denied.

## BACKGROUND

### I. Parties and Subject Matter

Moore is a "passionate science fiction writer" residing in Maryland. Second Am. Compl. at 1, Aug. 29, 2013, ECF No.45. He wrote several original works, including two screenplays at

1

issue here: *Aquatica* and *Descendants: The Pollination* (*Pollination*). *Id*. Moore wrote *Aquatica* in 1992 and registered it with the U.S. Copyright Office in 1994; he wrote *Pollination* in 2002 and registered it in 2003. *Id.* He later revised *Aquatica* and re-registered the screenplay in 2006 under the title *Aquapocalypse*. Mot. Dismiss at 12, Jun. 29, 2012, ECF No. 23.[1]

Defendants are individuals and entities involved in writing, producing, and distributing the film *Avatar*. Second Am. Compl. at ¶¶ 4–6. James Cameron is a writer, producer, and director who Defendants assert wrote *Avatar*. *Id*. at ¶ 4. Cameron is also the principal owner of Lightstorm Entertainment, the California corporation that produced the film. *Id*. at ¶¶ 4–5. Twentieth Century Fox Film Corporation is a film studio incorporated in Delaware with its principal place of business in California. *Id.* at ¶ 6. Fox produced and distributed *Avatar*. *Id*.

Fox released *Avatar* in movie theaters worldwide in December of 2009. *Id*. at ¶ 8. It is unclear precisely when the script was written, but Moore alleges that Defendants pre-registered the screenplay that would become *Avatar* in November of 2006. *Id*. at ¶ 34.[2] Upon release, the film received substantial critical acclaim; it was nominated for nine and won three Academy Awards as well as a Golden Globe Award. *Id*. at ¶ 9. The film also generated a video game, and several sequel films are apparently planned. *Id*. As of August of 2012, *Avatar* remains the highest-grossing film of all time with reported box office earnings surpassing $2.7 billion. *Id*.

II. **Defendants' Alleged Access to *Aquatica* and *Pollination***

Moore alleges that Defendants had access to both scripts well before they pre-registered *Avatar* in 2006. *Id*. at ¶ 34. According to Moore's Second Amended Complaint, he first

---

[1] The Court will refer to *Aquatica*/*Aquapocalypse* as *Aquatica*.

[2] Defendants allege that the "scriptment" (a narrative-style version of the story) for *Avatar* was completed prior to Moore's submission of *Pollination*, but do not allege a precise date. Mot. Dismiss at 7 n.5. That allegation is not central to the question raised in the instant motion; namely, whether Moore's contract claims are preempted by the Federal Copyright Act.

submitted the screenplay for *Aquatica* to Lightstorm in 1994 and then again in 1995, always through some intermediary or intermediaries. *Id*. at ¶¶ 23–24. Moore does not allege that these intermediaries were authorized to receive scripts on behalf of Defendants, nor does he describe industry conventions for submitting scripts in detail.

Eight years later, in or around January of 2003, Moore obtained contact information from the Director's Guild of America for Cameron's business manager at Sher, Sherr, Gelb, and Company ("SSG"). *Id*. at ¶ 25. Moore alleges that he sent a script to SSG, and on referral sent a copy to Tom Cohen, Lightstorm's Creative Director, on April 7, 2003. *Id*. at ¶ 26–27. Moore alleges that Lightstorm subsequently informed him that it was not interested in producing *Aquatica*, but does not indicate how or when Defendants allegedly contacted him. *Id*. at ¶ 28.

In July of 2003, Moore sent the screenplay for *Pollination* to Lightstorm through counsel, allegedly "with permission" from Lightstorm. *Id*. at ¶ 29. Moore asserts that he made a series of follow-up phone calls to Lightstorm throughout 2003 and sent mail in February 2004. *Id*. at ¶¶ 30-31. On April 29, 2005, Plaintiff registered *Pollination*-themed artwork with the U.S. Copyright Office and, on some unstated date, submitted the art to a producer who allegedly had "a nexus" with Cameron. *Id*. at ¶ 32.[3] On May 3, 2006, Moore registered a revised copy of *Pollination* with the Writers Guild of America. *Id*. at ¶ 33.

## PROCEDURAL HISTORY

Moore filed his first complaint on December 19, 2011. Compl., ECF No. 1. He amended his complaint twice, first on June 11, 2012 [Am. Compl., ECF No. 21] and then on August 29, 2012 [Second Am. Compl.]. He claims that in the course of writing, producing, and distributing

---

[3] The producer, Sybil Danning, allegedly worked with Cameron on the film *Battle Beyond the Stars*. Second Am. Compl. at ¶ 32. However, Moore does not allege that Danning ever delivered the drawings to Lightstorm, Cameron, or Fox, or was authorized to accept artwork submissions on behalf of Defendants.

3

*Avatar*, Defendants (1) breached an implied contract as to *Pollination*, (2) breached an implied contract as to *Aquatica*, (3) violated the Federal Copyright Act as to *Pollination*, and (4) violated the Federal Copyright Act as to *Aquatica*. *Id*. at 2. Moore sought declaratory relief as well as a total of $2.5 billion in actual and punitive damages, subject to an accounting. *Id*. at 15–16.

Defendants moved to dismiss Moore's complaint for failure to state a claim on June 29, 2012. Mot. Dismiss. The Court held a motions hearing on March 18, 2013 and granted the Motion to Dismiss as to Moore's breach of implied contract claims and denied the motion as to the Federal Copyright Act claims. ECF No. 59.[4]

Moore filed a Motion for Reconsideration as to the breach of implied contract claims on April 15, 2013. Mot. Recons. Defendants filed their opposition on May 2, 2013 [Defs.' Opp'n, May 2, 2013, ECF No 84] and Moore replied on May 28, 2013 [Pl.'s Reply, May 28, 2013, ECF No. 89].

## ANALYSIS

Moore's Motion for Reconsideration suffers from fatal procedural and substantive defects. First, the motion is time-barred because the underlying Order is not susceptible to reconsideration under either Rule 60(b) or 59(e). Second, even if Moore's motion were properly raised under either Rule 60(b) or 59(e), he has failed to satisfy the requirements for motions under those Rules.

**I.      Moore's Motion for Reconsideration is Not Timely Because it is Not Proper under Either Rule 60(b) or 59(e).**

The Local Rules for the District of Maryland state: "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed

---

[4] The Court also dismissed Moore's "claims" for an accounting and declaratory relief, noting that these were essentially requests for relief under the Federal Copyright Act and thus preempted. Moore does not challenge the dismissal of the accounting and declaratory relief claims.

with the Clerk not later than fourteen (14) days after entry of the order." D. Md. Ct. Local R. 105.10. Federal Rule of Civil Procedure 60(c) states that a motion made under the auspices of Rule 60(b) must be made "within a reasonable time," and Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e), 60(b)–(c).

Here, the Court issued its Order granting-in-part and denying-in-part Defendants' Motion to dismiss on March 18, 2013. ECF No. 59. Moore filed his Motion for Reconsideration on April 15, 2013, twenty-eight days after the Order issued. Mot. Recons.; *see generally* Fed. R. Civ. P. 6(a)(1). His motion, then, is timely only if properly brought under Rules 60 or 59.

A. Moore's Motion for Reconsideration is not proper under Rule 60(b) or Rule 59(e) because the Court's March 18, 2013 Order is not a final judgment.

Orders are only susceptible to reconsideration under Rules 60(b) and 59(e) if they constitute "final judgments." *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("Rule 60(b) [is] not available for relief from an interlocutory order. Rule 59(e) is equally applicable only to a final judgment"). Judgments are generally only final where they adjudicate and resolve *all* claims as to the parties. *See Millville Quarry Inc. v. Liberty Mut. Fire Ins. Co.*, 217 F.3d 839, *3 (4th Cir. 2000) (unpublished).[5] An order dismissing fewer than all claims is not a final judgment for which a Rule 60(b) or 59(e) motion is appropriate, but rather an interlocutory motion that may be contested under Rule 54(b). *See Quigley v. United States*, 865 F. Supp. 2d 685, 699 (D. Md. 2012) (Chasanow, C.J.) (quoting Fed. R. Civ. P. 54) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or

---

[5] There is a single exception: a final disposition of fewer than all the claims may be a "final judgment if, and only if, the court made "an express determination that there is no just reason for delay" with respect to partial resolution and expressly directed judgment on the resolved issues. *See Millville Quarry*, 217 F.3d at *3. No such express determinations were made here and Moore does not argue that there were.

5

the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *Crouch v. City of Hyattsville, Md.*, DKC 09–2544, 2010 WL 4868100, at *2 (D. Md. Nov. 23, 2010) (holding that an order dismissing some, but not all of the claims as to the parties was an interlocutory order and not a final judgment to which a Rule 59(e) motion might apply).

This Court's March 18, 2013 Order dismissing some, but not all, of Moore's claims is not a final judgment. Just as in *Crouch*, where the court ruled that an order dismissing fewer than all of plaintiffs' claims against the defendants was interlocutory and not a final judgment, here several of Moore's claims against Defendants survived the Motion to Dismiss. *See Crouch*, 2010 WL 4868100 at *2. Therefore, as a matter of law, neither a 60(b) nor a 59(e) motion is available to Moore.[6]

B. <u>Even if the March 18, 2013 Order were a final judgment, neither Rule 60(b) nor Rule 59(e) may be used to merely re-argue issues previously raised.</u>

Neither Rule 60(b) nor 59(e) is appropriate for reconsideration of already-argued issues. *See Eberhardt v. Integrated Design and Constr., Inc.*, 167 F.3d 861, 872 (4th Cir. 1999) ("Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue"); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment"); *Mascone v. Am. Physical Soc., Inc.*, No. RWT 07–966, 2009 WL 3156538, at *3 (D. Md. Sept. 25, 2009) (unreported) (Titus, J.) ("[A] motion for reconsideration is not a proper vehicle for an entreaty for the Court to change its mind . . . by rehashing the arguments made in

---

[6] Even if the Court were to treat Moore's motion as one arising pursuant to Rule 54(b), which Moore himself does not suggest, Rule 54 is not among the exceptions to the Local Rule's time limits and thus the motion would still be time-barred. *See* D. Md. Ct. Local R. 105.10.

6

the motions, supporting memoranda, and oral arguments before the Court at the summary judgment hearing").

Here, Moore argued against preemption in his Opposition to Defendants' Motion to Dismiss, raising essentially the same arguments as he does now in his Motion for Reconsideration. ECF No. 35 at 35–44. Then and now, the primary thrust of Moore's argument is that the Court should apply California and Ninth Circuit law finding claims of breach of implied contract not preempted by federal copyright law. *Compare* ECF No. 35 at 41–44 *with* Mot. Recons. At 9–12. Because Moore essentially asks the Court to change its mind without raising new issues, facts, or arguments, neither Rule 60(b) nor Rule 59(e) is a proper vehicle for his Motion for Reconsideration. *Mascone*, 2009 WL 3156538, at *3. Thus, the motion is time-barred.

Notwithstanding his efforts to style his motion as one arising under Rule 60(b) or Rule 59(e), Moore has run afoul of the stringent time limits for such motions in the District of Maryland. Were his motion's shortcomings merely procedural, there might be cause for the Court to reconsider its March 18, 2003 Order *sua sponte*. *See Fayetteville Investors*, 936 F.2d at 1472 (agreeing that the district court could review an interlocutory order *sua sponte* under Rule 54). However, the substance of Moore's arguments fails to persuade this Court to take the extraordinary measure of granting a motion for reconsideration, let alone doing so *sua sponte*.

II. **Moore's Motion Fails to Meet the Standards for Reconsideration Under Either Rule 60(b) or Rule 59(e)**

Assuming that the March 18, 2013 Order is amenable to review under Rule 60(b) or Rule 59(e), Moore has still failed to satisfy the respective requirements for those Rules.

A. <u>Moore is not entitled to relief under Rule 60(b) because he does not and cannot make the required showing for a Rule 60(b) motion.</u>

Under Rule 60(b), the moving party "must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Werner v. Carbo*, 731 F.2d 204, 206–207 (4th Cir. 1984). Of these requirements, the two that strike the deepest blows to Moore's motion are his failure to present a "meritorious defense" or demonstrate "exceptional circumstances."

To present a meritorious defense, "the moving party must show that, if relieved from the order and given another chance to litigate the underlying issues, he will have meritorious arguments to deflect the opposing party's claims." *Evans v. Legislative Affairs Div., ATF*, No. 6:12-cv-00641-JMC, 2013 WL 2635933, at *2 (D.S.C. Jun. 11, 2013). This means that for Moore to get a second bite at the preemption apple under Rule 60(b), he must show that there is a real possibility that the outcome of his breach of implied contract claims would be different if those claims were reinstated. *See Coomer v. Coomer*, 217 F.3d 838 (4th Cir. 2000) (unpublished) (holding that plaintiff's failure to raise "additional, more compelling defenses" than those that resulted in summary judgment was fatal to his Rule 60(b) motion); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (holding that the movant presented a meritorious defense where it had plead sufficient facts to state a claim, even though it suffered default judgment due to attorney error).

Here, Moore fails to show any real possibility that his contract claims would survive preemption. The Fourth Circuit applies a two-step test to determine whether the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*, preempts a state law. *See United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463. A state law claim is preempted when (1) the work in question falls "within the scope of the 'subject-matter of copyright'" and (2) "the

8

rights granted under state law" are "equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Id*. (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993)).[7] The parties do not seriously dispute that Moore's breach of implied contract claims satisfy the first prong; the narrow issue at hand is whether the claims are "equivalent" to exclusive rights under federal law.

A contract claim is equivalent to the rights arising under the Federal Copyright Act unless the claim (1) requires an "extra element" in addition to those required for the Copyright Act and (2) the extra element makes "the nature of the claim *qualitatively different* from copyright infringement." *See Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 782–83 (D. Md. 2008) (emphasis added). The argument behind Moore's Motion for Reconsideration is that under California law, an implied-in-fact contract formed between Moore and the Defendants. Mot. Recons. at 7. That contract allegedly gave rise to an implied promise to pay if Defendants used or took from Moore's copyrighted materials. *Id*. Moore argues that the implied promise constitutes the "extra element" differentiating his contract claims from claims arising under the Federal Copyright Act. *Id*. at 9–10.

Fourth Circuit precedent supplies no clear and definitive statement on this issue on substantively similar facts. Moore relies primarily on *Acorn Structures, Inc., v. Swantz*, 846 F.2d 923 (4th Cir. 1988), a leading case on preemption of a breach of implied contract claim. In *Acorn Structures*, an architectural company supplied plans to a client under a "design agreement" which did not commit the client to using the plans but established incentives for him to do so. *Id*. at 924. The client subsequently used the plans without taking advantage of the incentives in the

---

[7] The "exclusive rights" under 17 U.S.C. § 106 are the rights to "(1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of the work, (4) perform the work publicly, and (5) display the work publicly." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993) (citing 17 U.S.C. § 106).

agreement, but also without compensating the company. *Id*. at 925. The Fourth Circuit held that the design agreement constituted an explicit contract with an implicit provision obliging the client to pay if he chose to use the plans. *Id.* at 926. That implicit promise to pay constituted the "extra element" which shielded the breach of contract claim from preemption. *Id*.

On its face, *Acorn Structures* might appear to support Moore's argument. Both cases involve an implicit promise to pay for the use of some proprietary materials. *See id.* at 925. However, the implicit promise in *Acorn Structures* arose from a bilateral agreement executed between the parties. *See id.* The existence and content of the "design agreement" there clearly demonstrated the intent of both parties to create a private law governing the use of those plans. *See id.* at 926. Conversely, here there is no evidence or allegation of any sort of express bilateral agreement between the parties as to either screenplay. Moore sent several copies of *Aquatica* to Lightstorm, almost exclusively through third parties. Lightstorm never contacted him in return, negotiated with him in any way, or even indicated that it ever received the screenplay for *Aquatica*, except allegedly to reject it.[8] With respect to *Pollination*, although Moore claims that he sent it to Lightstorm with "permission," he does not allege any sort of bilateral negotiation or contact ever resulted. He simply alleges that he attempted to contact Lightstorm about that screenplay at various points during 2003 and in February of 2004. Consequently, the circumstances here are substantially distinct from those in *Acorn Structures.*

Other opinions from the Fourth Circuit run contrary to Moore's argument. In particular, in *Wharton v. Columbia Pictures Indus., Inc.*, 907 F. Supp. 144, 146 (D. Md. 1995), the Court ruled that a screenwriter's breach of contract claims were equivalent to the "right to prepare derivative works" established by the Federal Copyright Act. Because the claim "concern[ed] the

---

[8] Again, Moore alleges no specific facts regarding when or how Lightstorm rejected *Aquatica*, or even who at Lightstorm contacted him.

central allegation that Defendants plagiarized [the plaintiff's] copyrighted screenplay," it was preempted by federal copyright law. *Id*. Here, just as in *Wharton*, Moore submitted a script that was allegedly rejected. *Id*. at 145. He claims that Defendants plagiarized or otherwise took from that screenplay without payment or permission, just as the defendants allegedly did in *Wharton*. *Id*. The Court's March 18, 2013 Order, therefore, is not only consistent with *Acorn Structures*, but also harmonizes seamlessly with the facts and holding from *Wharton*.

Another highly similar case, *Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535 (D. Md. 2000) (Motz, J.), held that federal copyright law preempted a screenwriter's breach of implied contract claim. The court held: "If in a given case [the contractual] right arises simply from an implied promise not to use another's ideas without paying for them, then the state law action is qualitatively equivalent to an action for copyright infringement and, therefore, will be preempted." *Id.* at 542. Here, Moore's claim is that Defendants breached an implied promise not to use his script without payment. The Court's March 18, 2013 Order, therefore, was also consistent with the *Viacom* decision.

Moore appears to be aware of the dearth of Fourth Circuit case law supporting his case and again invites the Court to embrace Ninth and Second Circuit precedent on the preemption issue. California and New York courts have unsurprisingly dealt with implied contract claims arising from the entertainment business.[9] Moore points to two decisions from outside the Fourth Circuit to support his argument against preemption; yet both cases show a level of bilateral negotiation totally absent from the facts in the instant case. In *Montz v. Pilgrim Films & Television*, 649 F.3d 975, 977–78 (9th Cir. 2011), the court held that "copyright law does not

---

[9] As early as 1956, the California Supreme Court held that industry practice gives rise to an implied agreement to pay for the use of a screenplay even absent any express contract. *See Desny v. Wilder*, 46 Cal. 2d 715, 737–38 (Cal. 1956).

preempt a contract claim where plaintiff alleges a bilateral expectation that he would be compensated for use of the idea, the essential element of a *Desny* claim that separates it from preempted claims for the use of copyrighted material." *Id*. at 977 (emphasis added). Yet in *Montz*, the plaintiffs—a film producer and publicist—had numerous in-person pitch meetings and discussions with defendants regarding their idea for a show. *Id.* Conversely, here, there were no bilateral discussions or even communications from Lightstorm or the other Defendants whatsoever, except for the supposed rejection notice for *Aquatica* and purported invitation to submit *Pollination*.

In *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 428 (2d Cir. 2012), the court held on similar facts that a breach of implied contract claim was not preempted. However, there again, the plaintiffs—including actor Hayden Christensen of *Star Wars* fame—met with the defendants to pitch the idea and had several follow-up conversations. *Id.* Here, no such dialogue took place. Thus, even were this Court to accept Moore's invitation to apply reasoning from outside this circuit, it is unclear at best whether *Montz* and *Forest Park Pictures* would support his case.

Therefore, because Moore has been unable to show that his breach of implied contract claim as pleaded contains an "extra element" that makes his claim qualitatively different from a claim under the Federal Copyright Act, he has not presented a "meritorious defense" as required for the Court to grant his Rule 60(b)(6) motion. *See Werner*, 731 F.2d at 206–207. Even if he had met that requirement, however, he has failed to establish any "exceptional circumstances." *Id.*

Exceptional circumstances are those "that create a substantial danger that the underlying judgment was unjust." *Murchison v. Astrue*, 466 Fed. App'x 225, 229 (4th Cir. 2012) (unpublished) (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir.1986)) (holding that

extraordinary circumstances existed where the trial court and Equal Employment Opportunity Commission both relied upon false assertions by the movant in awarding it summary judgment); *Aikens v. Ingram*, 652 F.3d 496, 500–501 (4th Cir. 2011) (holding that no extraordinary circumstances existed where the adverse judgment of the court could have been prevented or appealed had plaintiff raised issues previously that he was only raising in his 60(b)(6) motion).

Moore raises no allegations of "exceptional circumstances" at all. He merely asks the Court to change its mind on an issue already considered and decided. Again, such a request is not cognizable under Rules 60(b) and 59(e). *Mascone*, 2009 WL 3156538, at *3. Therefore, even if Moore could have made his Motion for Reconsideration under Rule 60(b), he has not done so in accordance with the strictures of that Rule.

B. Moore is not entitled to relief under Rule 59(e) because he does not and cannot make the required showing for a Rule 59(e) motion.

Under Rule 59(e), a movant is only entitled to relief under three, narrow circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co.*, 148 F.3d at 403. Moore does not allege any changes in law or new facts; he merely argues the Court erred in holding that his contract claims were preempted. Thus, to prevail, he would have to show the Court committed a clear error of law in finding that the Federal Copyright Act preempts a breach of implied contract claim.

For the same reasons as Moore failed to present a "meritorious defense" for the purposes of Rule 60(b), he has not shown that the Court committed a clear error of law in dismissing his contract claims as preempted by the Federal Copyright Act. The Court's decision from the bench on March 18, 2013 is consistent with Fourth Circuit precedent, including *Acorn Structures*, 846 F.2d 923, *Wharton*, 907 F. Supp. 144, and *Fischer*, 115 F. Supp. 2d 535. Moreover, Moore's

13

case is distinguishable from the Ninth and Second Circuit cases he asks the Court to consider. For those reasons, the Court is not in clear error and Moore's motion is without merit.

## CONCLUSION

For the foregoing reasons, Moore's Rule 60(b)(6), or in the Alternative Rule 59(e), Motion for Reconsideration and to Alter or Amend the Order Issued on March 18, 2013, Dismissing Plaintiff's Breach of Implied Contract Claims [ECF No. 73] is denied. A separate Order follows.

Date: August 8, 2013 /s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE