IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRYANT MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 8:11-cv-03644 (RWT) |
| | ) | |
| LIGHTSTORM ENTERTAINMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S OBJECTION TO MAGISTRATE JILLYN SHULZE'S
AUGUST 27, 2013 RULING**

Comes Now Plaintiff, Bryant Moore, by and through Counsel, and respectfully objects to Magistrate Jillyn Shulze's August 27, 2013 ruling regarding Defendants' Designation of certain of Defendant James Cameron's ("Cameron") undated notes. These notes were allegedly prepared by Cameron in 1995-1996 prior to his writing the undated, uncopyrighted Avatar Scriptment.

To the extent that Defendants initially redacted sentences, paragraphs and even pages from their initial submission, as argued more fully below, the law requires them to specifically explain the basis for each redaction. That simply did not occur here. The court here relied on a self-serving Declaration from Defendant Lightstorm's executive, Jon Landau ("Landau") without applying the applicable legal test to ascertain and corroborate the validity of his affirmation.

The court's ruling effectively protected Defendants and imposed an almost insurmountable burden upon Plaintiff's experts to grasp the significance of these notes in the same manner as Plaintiff. In practical context, Plaintiff 's experts are now tasked with an additional task and level of scrutiny, that is to step into Plaintiff's judgment shoes without the benefit of his knowledge and experience with the contested works. This further escalates Plaintiff's proof burden. On this unique issue, neither the law nor the applicable facts, justify the court's ruling as demonstrated by the argument below.

## I. BACKGROUND

On August 17, 2012, Mr. Moore, filed his Second Amended Complaint ("SAC") alleging copyright infringement against Defendants. Mr. Moore's SAC asserts that he wrote and developed a screenplay entitled *Aquatica* between 1992 and 1994, and a second screenplay entitled Descendants: The Pollination ("The Pollination") between 2002 and 2003. It is uncontroverted that Plaintiff registered *Aquatica* with the United States Copyright Office in May of 1994, *The Pollination* in July of 2003, and an edited version of *Aquatica*, entitled *Aquapocalypse*, in May of 2006.[1] This case presents a novel copyright action involving these several writings, juxtaposed against Defendant Cameron's undated, uncopyrighted Scriptment (supposedly written in either 1995 or 1996 by Mr. Cameron alone), his

Avatar screenplay (copyrighted in 2007) and his and 20th Century Fox's Avatar movie (copyrighted in 2009).  Mr. Moore claims that Defendants extrapolated substantial content more than 100 substantial similarities and more than one dozen fragmented literal similarities from his two copyrighted works and integrated them into Avatar.  Defendants argue that Avatar is an original screenplay and is not substantially similar to Plaintiff's works.

   At the outset, it is important to note that Defendant Cameron's undated notes predate his 1996 Scriptment, which he admits "lays out in great detail the plot, theme, characters, settings, and sequence of events, including what the characters, setting and scenery look like."  The Scriptment is inescapably foundational to the 2007 Avatar screenplay and movie.  Notably, Defendants argued in their Motion to Dismiss the First Amended Complaint that the undated Scriptment was created in 1994.  In its revised Motion to Dismiss Plaintiff's Second Amended Complaint, Defendants back-tracked and altered that date to 1995.  Adding to the complexity of the issue, Mr. Cameron has now testified in his deposition that he wrote the Scriptment in 1996.  Further, these notes could possibly reflect nuances and concepts taken directly from Plaintiff.  Additionally, these undated notes have not been independently authenticated or corroborated by other than Cameron, and their credibility remains at issue.

Defendant Cameron's writings were initially submitted to Plaintiff with extensive redactions. In lieu of a motion to compel, Defendants produced unredacted notes on August 2, 2013, four (4) days before Mr. Cameron's second deposition in Los Angeles, California. Needless to say, Plaintiff could not adequately review these notes, nor could his expert, prior to the already scheduled Cameron deposition. As well, Plaintiff had already purchased airline tickets and made travel arrangements. Notably, the previously redacted Cameron notes are allegedly first-hand notes which Cameron claimed to have written more than ten (10) years before 20th Century Fox copyrighted the Avatar screenplay.

Following several weeks of exchanges on this subject, on August 15, 2013, counsel for Mr. Moore wrote the following email to Defendants counsel, which indicates the prejudice to Plaintiff:

> I am deeply concerned, having carefully reviewed the redacted notes (documents) produced just days before Mr. Cameron's deposition that you imposed a level of confidentiality that precluded my client from reviewing those documents.
>
> Your restriction significantly impedes my ability to communicate directly with my client about relevant documents and to have the benefit of his views then and now about Mr. Cameron's notes.
>
> Your restriction is highly prejudicial and could not have been then resolved in a timely fashion.
>
> By this email, I am urging you to revise the stated restriction that precludes Mr. Moore from reviewing Mr. Cameron's unredacted notes.

> Also, given that these notes were undated and thus unverifiable, I am requesting copies of the original notes and the Meta data regarding same, even if it means in this instance an inspection of Mr. Cameron's writing computer at his ranch subject to any and all appropriate protective orders with specific professional scrutiny.

Counsel for the Defendants responded on August 16, 2013, as follows:

> I will consult my clients. But my understanding is that we will not agree to lower the designation on the documents you reference. It remains RESTRICTED CONFIDENTIAL. Given that your experts can see the notes, I do not see any reason why your client needs to see them. We have explained the basis for the designation. I will get back to you.

Against this backdrop, Defendants insist that Mr. Cameron's now unredacted writings are justifiably "Restricted Confidential" under this court's protective order. Defendants' "Restricted Confidential" designation specifically precludes Mr. Moore from reviewing and scrutinizing Defendant Cameron's extensive notes, more than forty single spaced pages, despite that Mr. Moore is in the best position to ascertain the notes' significance in relation to his scripts and legal claims. Such a restriction in unduly burdensome and significantly impedes the development of Mr. Moore's claims. Mr. Moore's counsel and experts are now required to consider highly-sensitive comparisons of Defendants' writings and Mr. Moore's scripts without benefit of Mr. Moore's analysis and firsthand

5

knowledge as to the potentially similar concepts, phrases and nuances that may be found within Mr. Cameron's writings.

On August 27, the Honorable Magistrate Schulze ruled that these notes should retain there "Restrictive Confidential" designation, which thus allows lawyers and experts' eyes only, and expressly precludes Plaintiff from reviewing them The court's ruling was based Lightstorm's Executive Officers Declaration, an incomplete "redaction log" and the court's belief that these 1995-1996 notes constituted potential Lightstorm trade secrets which Mr. Moore, as a competitor, might possibly use.

Plaintiff files this Objection and argues here that Magistrate Schultz's ruling failed to require Defendant to make the requisite showing required by applicable law to establish the heightened confidentiality level. Specifically, Defendants failed to provide an explanation or justification for each redaction. Absent specific justifications for each redaction, the court cannot objectively ascertain whether the asserted level of confidentiality for the redaction is valid in the first place, and whether the redacted information constitutes an actual trade secret. Unlike any case in American copyright jurisprudence, or cited by Defendants in support of this "Restricted Confidential" status, Defendants' select redactions are interspersed sporadically among undated forty (40) pages of notes that Defendant claims were used to develop Defendant Cameron's 1996 Scriptment. Most restrictive

6

confidential designations are applied to inventions and technical writings, which unto themselves are separate and distinct, and mot interspersed in a centralized literary writing as here. Defendants also asserted fear of some commercial harm versus Plaintiff enjoying an opportunity to review these undated notes to ascertain their substantive significance in terms of similarity, authenticity and credibility. Defendants claim and argue that these forty (40) pages of single spaced notes reflect Defendant Cameron's thinking, ideas and concepts about Avatar prior to its creation.  As alleged, these notes constitute foundational, substantially relevant evidence equally as much as Plaintiff's note and drafts are foundational to his two scripts, *Aquatica* and *The Pollination*.

## II. ARGUMENT

    A. Defendant Improperly Designated Cameron's notes Restricted Confidential.

Defendants self-serving, broad-brushed "Restricted Confidential" designation fails to meet the required threshold showing to justify its imposition of the heightened designation under Federal Rule of Civil Procedure 26(c), Local Rule 104-13, and the applicable protective order.  Under the protective order, Defendant should only have designated material as "Restricted Confidential" if it believed in good faith that the protected content contained sensitive personal information, trade secrets or other confidential research, development, or

commercial information which is, in fact, highly confidential. Plaintiff hereby challenges Defendants' "Restricted Confidential" designation, consistent with this court's protective order. Further, FRECP 26(c) states that "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). In order "to establish that a document is entitled to protection from disclosure under Rule 26(c), a party must show that '(1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm.' " *Minogue v. Modell*, No. CCB–03– 3391, 2011 WL 1308553, at 4 (D. Md., Mar. 30, 2011) (quoting *Deford v. Schmid Prods. Co*., 120 F.R.D. 648, 653 (D. Md. 1987)). Where the party seeking protection under Rule 26 is a business, "it must show that disclosure 'would cause significant harm to its competitive and financial position.'" *Id*. (quoting *Deford*, 120 F.R.D. at 653).

If the party establishes confidentiality and harm, "then the party seeking disclosure 'must establish that the information is sufficiently necessary to [its] case to outweigh the harm of disclosure.' " *Id.* (quoting *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998)). Defendants cannot reasonably establish that disclosure of Mr.

8

Cameron's personal notes regarding Avatar to Mr. Moore would cause Defendant's significant harm or even threaten their alleged trade secrets without first establishing the justification for each of the 59 redactions which they claim constitutes reasons for the heightened confidentiality.

Defendants have redacted about 44-45 segments of Cameron's forty (40) pages of notes, and argue that Defendant Cameron's 1995-1996 writing records thinking that is being used for an *Avatar* sequel. As such, Defendants actually open the evidentiary door to the question whether Cameron possibly borrowed from Moore's underwater science fiction screenplay in *Avatar* and the *Avatar* sequel. This is particularly the case since the notes here post-date *Aquatica* and pre-date the *Avatar* Scriptment. Plaintiff more than anyone else knows what he wrote in his *Aquatica* Screenplay, what he alleges has been copied and is thus uniquely able to study Defendant Cameron's notes and to ascertain their implications under the general confidential designation.[2]

Defendants' only explanations for its redactions are spelled out below:

---

[2] / Plaintiff notes that the famous science fiction writer, Harlan Ellison, accused Defendant Cameron of extrapolating from his writings, which Cameron admitted to in a third party interview which appeared in a written publication. Hence, the court should not give special status or credence to Cameron simply because of his status.

**Beginning Bates No. Grounds for Redaction**

STORM0000017:  Non-responsive, Private, Irrelevant Information (including information about talent meetings, award shows, and media requests)

STORM0009720:  Other Projects (including Bright Angel Falling and Strange Days)

STORM0009722: Other Projects (non Cameron)

STORM0009731: Financial Information

STORM0009747: Other Projects (including Bright Angel Falling)

*STORM0009749: Avatar Sequels* (Emphasis Added)

*STORM0009789: Avatar Sequels (*Emphasis Added)

*STORM0009885: Avatar Sequels* (Emphasis Added)

STORM0010397:  Non-responsive, Private, Irrelevant Information (including information about talent meetings, award shows, and media requests)

STORM0010756:  Financial Information

STORM0010773:  Financial Information and Other  Projects (including Titanic and Bright Angel Falling), Work Product on case not involving Avatar

STORM0010967: Attorney Client Privilege

STORM0010970: Attorney Client Privilege

STORM0010971: Attorney Client Privilege

STORM0010972: Attorney Client Privilege

STORM0010975: Other Projects (Titanic and non-Cameron projects related to the Titanic)

STORM0011124 Social Security Number

    Most of these redaction log references do not apply to the actual notes that are at issue. Plaintiff does not seek confidential financial information or privileged information. The notes at issue involve Bates Stamped documents 9749 through 9788, forty (40) pages of undated notes with approximately 43 redactions that are not trade secrets at all. Plaintiff underscores that Defendant Cameron's redaction log referenced only one page, Bates 9749, which contained three (3) redactions, on grounds that the content was related to the Avatar sequel. Its next redaction log reference is page 9780, which also references the Avatar sequel. To be clear, Defendant Cameron's redaction log thus failed to state its justification for the additional forty (40) redactions on Bated pages 8750 through 9788. (See Sealed Exhibit 1)

    Applicable law requires Defendant to inform the court as to the basis for the documents' highly restrictive confidentiality designation, which Defendants claim is rooted in the above referenced incomplete and deficient redaction log bolstered by Landau's equally deficient Declaration, which makes no effort to explain the basis for the additional redactions. Exhibit 2.Absent a specific explanation for each redaction, Defendants' so called "redaction log" is general in nature. Therefore, Defendants fail miserably to justify the redaction in the first instance

and the basis for their heightened protected status of "Highly Confidential in the second instance. Nevertheless, the court credited Landau's Declaration to bolster Defendants defective redaction log, thereby justifying and upholding the heightened confidentiality designation.

Critical to this analysis, Defendants argue that Plaintiff is entitled to review redacted notes, which were given a "Confidential" Designation, but not allowed to review the same documents once unredacted. These redactions are required to therefore merit some yet known factual reason for an "attorney's eyes" designation.

In his Declaration at paragraph 4, Landau stated without more: "The previously redacted portions of the notes contain story concepts that we may use in sequels to Avatar." He does not refer to any one of the 43 specific redactions and instead suggests that: The trade secret argument is rooted in a possible Avatar sequel. His Declaration is general and broad brushed in nature and the law requires more. F.R.C.P. 26 requires that Defendants' good faith assertion of confidentiality, and here, "Restricted Confidentiality," be made with specificity. Hence, Mr. Cameron is required to make "'specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm'" *Minogue*, 2011 WL 1308553, at 4 (*quoting Deford*, 120 F.R.D. at 653); see *Minter*, 2010 WL 5418910, at 8. "Broad

allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [Rule] 26(c) test."). There is no record of specificity made in this record for the now unredacted notes, which supports Defendant's designation.

Defendants also argued that any notes written by Cameron related to the Scriptment, which might be used in an Avatar sequel should be protected at the highest level of confidentiality. This is despite that they were allegedly written in 1995-1996, 14 years before the Avatar movie was produced and written contemporaneously with notes that are not deemed "Restrictive Confidential." Therefore, if there are relevant redactions amidst the above referenced forty (40) pages that suggest a relationship or similarity to Plaintiff's 1994 work, such as underwater battle scenes or settings, Defendant can merely state that its notes show underwater scenes, which are being considered in a sequel and thereby effectively bar Plaintiff's scrutiny in all respects.

Neither Plaintiff's attorney nor his experts can discuss the notes with him. This logic is flawed in several respects. First and foremost, their approach fails to satisfy the test outlined in this jurisdiction. Secondly, if the notes at issue in any way show similarity to *Aquatica*, Plaintiff should be allowed to scrutinize them first hand to ascertain the nature and extent of the comparison and its creative nuances, despite that Defendants may have decided to use ideas expressed in Cameron's notes for a sequence. This present case is confined to Avatar;

13

however, if the notes were to reveal to Plaintiff that Defendants used his ideas as well for the sequence, then Plaintiff's interest in said notes significantly outweighs the harm to Defendants in allowing him to review said notes. Otherwise, Defendants can create evidentiary barriers that preclude Plaintiff's justifiable scrutiny of pertinent evidence.

Further, if the restriction was lifted, as it should be, Defendants' documents would remain otherwise covered by the blanket confidentiality provided by this court's protective order, which would simultaneously allow Plaintiff to review the documents and shield them from the public. As the creator of the infringed upon works, Mr. Moore merely requests that he be able to aid his counsel and experts in the context their review of Cameron's notes and other relevant writings with Plaintiff's copyrighted works. Defendants' unnecessary designation of Mr. Cameron's notes as "Restricted Confidential" denies Mr. Moore that very basic right to develop his proof in the discovery process based upon a defective and deficient record, and thereby creates a blind spot in this evidentiary development to Defendants' significant advantage.

Defendants' mere suggestion that Mr. Cameron's unredacted, forty (40) plus pages of undated notes constitute trade secrets or in some way relate to a potential and supposedly irrelevant Avatar sequel without being more specific or

targeted in their approach is insufficient under the rule. As such, this court should order the documents to be re-designated as "Confidential."

## III.  CONCLUSION

For these reasons, Plaintiff's Objection should be granted.

**Dated:** September 10, 2013

                                              Respectfully submitted,

                                              _____/s/_____
 Donald M. Temple [#408749]
1101 15th Street, N.W., Suite 910
Washington, D.C. 20005
(202) 628-1101  Telephone
(202) 628-1149  Facsimile
dtemplelaw@gmail.com

*Attorney for Plaintiff Moore*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| BRYANT MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 8:11-cv-03644 (RWT) |
| | ) |
| LIGHTSTORM ENTERTAINMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **ORDER**

UPON CONSIDERATION of Plaintiff's Objection to this court's Agust 27, 2013 Ruling and its statement of points and authorities in support thereof, and the record herein, it is this

___day of _____, 2013, hereby ORDERED, that the immediate Objection is GRANTED.

_____
Judge

Copies to:

Donald M. Temple
1101 15th Street, N.W., Suite 910
Washington, D.C. 20005

J. Matthew Williams
Gregory O. Olaniran                     Robert H. Rotstein
Mitchell Silberberg, and Knupp, LLP     Mitchell Silberberg, and Knupp, LLP
1818 N St., N.W., 8th Floor             11377 W. Olympic Blvd.
Washington, D.C. 20036                  Los Angeles, CA 90064